## COMMISSIONER OF INTERNAL REVENUE v. FELIX OIL CO.

## FELIX OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10448.

Circuit Court of Appeals, Ninth Circuit.

Aug. 2, 1944.

---

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, F. E. Youngman, and Warren F. Wattles, Sp. Assts. to Atty. Gen., for Commissioner.

·Paul S. Marrin and Robert L. Bridges, both of San Francisco, Cal., for Felix Oil Co.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This case is before us on petitions of the Commissioner and the taxpayer to review a decision of the United States Tax Court entered upon a proceeding for the redetermination of deficiencies. The deficiencies were assessed as a result of the Commissioner's disallowance of depletion deductions claimed by the taxpayer in its income returns for 1937, 1938, and 1939, under §§ 23(m) and 114(b) (3) of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev.Code, §§ 23(m), 114(b) (3). The facts were stipulated.

In December 1928 the taxpayer was the owner in fee of 160 acres of land located in the Kettleman Hills in California. At that time it entered into a written agreement purporting to lease the land to the Petroleum Securities Co. for the term of twenty years and so long thereafter as oil or gas might continue to be produced. This agreement has since remained in full force and effect. It is in form a lease, and save in one particular its provisions are very similar to those of the typical oil and gas lease. The peculiarity lies in this: instead of retaining a gross royalty, the lessor was to receive 50% of the "net profits." The term "net profits" was defined as the proceeds of sale of the oil less the expenses of the lessee in drilling, pumping, storage, and the like, less also a number of other items such as state and county taxes, insurance, and general operating costs. While the agreement recites that it was given in consideration of the sum of $10, the actual amount paid to the lessor at the time of execution was $150,000.

The Commissioner, resting his argument mainly on the provision for the payment of net profits, asserts that the contract is an absolute sale rather than a lease, that is to say, that the contract effected a disposition of all the taxpayer's economic interest in the oil in place. The consideration, he contends, was the $150,000 payment plus a share of the net profits of the operation with no retention of any interest in the underlying oil. If the Commissioner's interpretation of the contract is correct the taxpayer would be entitled to no depletion allowance. Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277; Blankenship v. United States, 5 Cir., 95 F.2d 507; McLean v. Commissioner, 5 Cir., 120 F.2d 942. However, the Tax Court, while recognizing the rule contended for by the government, was of opinion that the contract did not amount to a sale of the oil before severance. It accordingly held that the deficiency assessments were unwarranted.

Under the terms of the agreement the taxpayer retained all rights of ownership except those specifically disposed of therein. It retained reversionary rights in the property, and the right of forfeiture in the event of the lessee's failure timely to prosecute drilling; also certain rights in fixtures and equipment upon termination of the lease. As stressed by the Tax Court, the instrument gave the lessee the right to ex-

278

plore the land for oil, and in the event oil were found, to operate on the land for the recovery thereof. Said the Court: "Ownership of the oil in place remained in petitioner as owner of the land and did not pass to the lessee before severance." It was thought that the provision for an equal division of the net profits of each paying well "was merely the yardstick adopted by the contracting parties to measure the production acquired by the lessee and the production retained by petitioner as lessor." Further, that the lessee received the proceeds of sale and paid the costs and expenses of production, not as the sole owner of the oil, but as one of two parties equally interested in the production and sale. The land, said the Court, was furnished by the lessor, and the labor, capital, and management by the lessee. Particular significance was found in a provision to the effect that the lessor, if dissatisfied with the amounts realized by the lessee, might require the latter to sell 50% of the production to purchasers of the lessor's own choosing.

We see no reason for rejecting this interpretation of the contract. It is clear that the taxpayer retained an economic interest in the oil in place. It had a capital investment in the land and in the paying wells, and the income it received from production was not, we think, income arising from a sale of the oil before severance. Cf. Palmer v. Bender, 287 U.S. 551, 53 S. Ct. 225, 77 L.Ed. 489; Helvering v. Elbe Oil Land Development Co., supra; Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907. In the case last cited the Supreme Court said (303 U.S. at page 382, 58 S.Ct. at page 625, 82 L.Ed. 907) that "the term 'gross income from the property' means gross income from the oil and gas * * * and the term should be taken in its natural sense. With the motives which lead the taxpayer to be satisfied with the proceeds he receives we are not concerned."

■ In making its returns for the years in question the taxpayer deducted the depletion allowance from the cash payments actually made by the lessee for those years. In the proceeding before the Tax Court it claimed it had overpaid its taxes, that is to say, that it was entitled to depletion allowance of 27½% on one-half of the gross income from the property before deduction of the expenses paid by the lessee. The Tax Court rejected the contention, holding that there had been no overpayment.

We think the holding is correct. The allowance for depletion under § 114(b) (3) is an amount equal to a stated percentage of the "gross income from the property" of the particular taxpayer. Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383; Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897. As we read the opinion in Helvering v. Mountain Producers Corp., supra, a contention virtually identical with that made by the taxpayer here was there rejected, the court saying (303 U.S. at page 382, 58 S.Ct. at page 625, 82 L.Ed. 907) that it was not "at liberty to construct a theoretical gross income by recourse to the expenses of production operations."

Affirmed.